In the Matter of UNIVERSAL MEDICAL SERVICES, INC., Debtor.

Appeal of Irving H. KUTCHER, Trustee in Bankruptcy.

No. 71–1466.

United States Court of Appeals, Third Circuit.

Argued April 4, 1972.

Decided May 30, 1972.

Marvin Krasny, Adelman & Lavine, Philadelphia, Pa., for appellant.

Leonard B. Rosenthal, Abrahams & Loewenstein, Philadelphia, Pa., for appellee.

Before SEITZ, Chief Judge, HUNTER, Circuit Judge, and McCUNE, District Judge.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge.

On May 7, 1970, the debtor (now bankrupt) Universal Medical Services, Inc. ("Universal") and appellee Liskey Aluminum, Inc., ("Liskey") entered into a contract for the "supplying and installing" of a raised steel floor at Universal's premises in King of Prussia, Pennsylvania. Thereafter Liskey delivered materials for the floor to the job site, and installation began. On August 5, 1970, after Liskey had installed approximately three-quarters of the floor, Universal filed a petition for arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701 et seq. Subsequently Universal failed to file a plan for arrangement under Chapter XI and was adjudicated a bankrupt. *See* Bankruptcy Act § 376, 11 U.S.C. § 776. Appellant Irving H. Kutcher, the Chapter XI receiver, was appointed trustee.

On August 7, 1970, two of Liskey's employees demanded that Universal allow removal of the materials on the job site. That demand was refused. On September 8, 1970, Liskey filed a petition to compel the receiver to adopt or reject the contract, and to reclaim the materials [1] if the contract were not adopted.

The Referee held (1) that since only 25 percent of the installation remained to be completed, only that portion of the contract was executory; (2) that the trustee had rejected the still-executory 25 percent of the contract; and (3) that reclamation would not be allowed.

On petition for review to the District Court, the Referee was reversed, and reclamation was allowed. In re Universal Medical Services, Inc., 325 F.Supp. 890 (E.D.Pa.1971). The trustee appeals.

The parties no longer dispute that the contract was executory on August 5, 1970, and that the trustee effectively rejected the contract, as is his right under Section 70(b) of the Bankruptcy Act, 11 U.S.C. § 110(b). *See* 4A Collier on Bankruptcy ¶ 70.43 (14th ed. rev. 1967). The fact that the contract has been rejected, however, does not automatically give Liskey the right to reclaim the materials.

Under Section 70(a) of the Bankruptcy Act, 11 U.S.C. § 110(a), the trustee in bankruptcy is "vested by oper-

---

1. The actual materials in issue here were purchased by Liskey at a public sale. The proceeds of that sale, $9500, have been segregated pending the final outcome of the reclamation petition.

ation of law with the title of the bankrupt" to various kinds of property. Bank of Marin v. England, 385 U.S. 99, 101, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966). But the Bankruptcy Act, insofar as it is relevant here,[2] does not vest the trustee with greater title than that which the bankrupt possessed. Bank of Marin v. England, *supra*. Where proper proof is presented that property in the possession of the trustee actually belongs to a third person, that property should be restored to the third person. Pearlman v. Reliance Insurance Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962); In re Metropolitan Offset Printers, Inc., 391 F.2d 770 (3d Cir. 1968); In re American Boiler Works, Inc., 220 F.2d 319 (3d Cir. 1955); *see* 4A Collier on Bankruptcy ¶ 70.39 (14th ed. rev. 1967). State law rather than federal law determines to whom the property belongs. Bryant v. Swofford Bros. Dry Goods Co., 214 U.S. 279, 291, 29 S.Ct. 614, 53 L.Ed. 997 (1909); In re Kravitz, 278 F.2d 820 (3d Cir. 1960); In re Forgee Metal Products, Inc., 229 F.2d 799 (3d Cir. 1956); In re Lipschutz, 228 F.2d 290 (3d Cir. 1955); Susquehanna Chemical Corp. v. Producers Bank & Trust Co., 174 F.2d 783 (3d Cir. 1949). In the present case the applicable state law is that of Pennsylvania.[3]

■ The District Court held, and we agree, that this contract was a construction contract, and not a severable contract to deliver certain materials and then to install those materials. The law in Pennsylvania is quite clear that:

"[u]nless provided otherwise by contract, materials furnished by the builder generally remain his property until affixed to the owner's land or delivered to and accepted by him as his property . . . ."

8 P.L.E. Contracts § 363, at 410 (1971). *See* Weintrob's Estate, 295 Pa. 374, 145 A. 425 (1929); Commonwealth ex rel. Schnader v. Nelson-Pedley Construction Co., 303 Pa. 174, 181–182, 154 A. 383, 385 (1931); 17A C.J.S. Contracts § 516 (1963).

Here the contract was silent regarding passage of title. It is conceded that Universal did not accept the material as its property when it was delivered to the job site. Nor is it argued that there was piecemeal delivery and acceptance as the material was installed by Liskey. The trustee argues, however, that the 75 percent of the material that was installed was "affixed" and thereby title to that portion of the material passed to Universal and to the trustee from Universal.[4] The outcome of this case thus depends upon whether the material was "affixed" within the meaning of the Pennsylvania rule of law quoted above.

The particular steel floor involved here consisted of some 17,440 square feet of steel tiles, set into a grid system sixteen inches above an existing floor. The grid system was attached to the existing floor, but the steel tiles were merely placed into the grid system and could be easily picked up and removed, with no damage whatever to the realty. Apparently the tiles that had been placed into the grid system were not permanently positioned, since the entire floor was to be leveled by means of jacks before installation would be complete.

Although the Pennsylvania rule stated above is clearly the applicable law, we

2. *Cf.* Bankruptcy Act §§ 60, 67(a), 67(c), 67(d), 70(c), 70(e), 11 U.S.C. §§ 97, 107(a), 107(c), 107(d), 110(c), 110(e).

3. Difficult choice-of-law problems may develop in cases where it is unclear which state's substantive law should be applied. *See* 4A Collier on Bankruptcy ¶ 70.04, at 60 n. 31. (14th ed. rev. 1967). But there is no such difficulty here, and neither party contends that the law of any state other than Pennsylvania should

govern the rights of the parties to ownership of the property in issue.

4. The District Court's decision allowing reclamation relied upon In re Thornton Co., 11 F.2d 669 (M.D.Pa.1926). That case, however, is not fully responsive to the trustee's argument, since the bankruptcy in that case occurred "[w]hile the structural material was on the ground of the [bankrupt], but before any of it was erected into the breaker building." 11 F.2d at 669.

have been able to discover no case in Pennsylvania or elsewhere in which application of the rule has involved a determination of whether, in a close case, materials have been "affixed." In the cases we have discovered, the material either had been positively incorporated into the structure,[5] or had positively not been so incorporated.[6]

Nor has it been argued that the public policy reflected in the Pennsylvania rule requires that the word "affixed" be given one meaning rather than another. On the contrary, the law is clear that the rule applies only where the parties have failed to specify when title to contruction materials shall pass. The rule may be varied merely by the expression of the parties' intent that title pass at some other time. *See* Muscrelli v. Mercantile Trust Co., 219 Pa. 602, 69 A. 40 (1908).

We look, then, to fixtures cases in which the status of the parties is other than that of owner-contractor. We examine these cases with some trepidation, however, since if anything is clear in the Pennsylvania law concerning fixtures, it is that the answer to "what is a fixture?" will vary with the status of the contesting parties.[7]

In determining whether in a given instance an item has been affixed to the realty, Pennsylvania cases have looked to at least three factors: (1) the nature and character of the act by which the item has been put into place; (2) the use or purpose of the item with regard to the part of the realty to which it is connected; and (3) the intention of the parties. *See, e. g.,* Justice v. Nesquehoning Valley R. R., 87 Pa. 28 (1878); Waltman v. Mayer, 97 Pa.Super. 236 (1929). It has been held that the last-mentioned factor is paramount. *See, e. g.,* Berry v. Heinel Motors, Inc., 162 Pa.Super. 52, 56 A.2d 374 (1948), and cases there cited; *see generally* 16 Pa. L.E. Fixtures § 1 (1959).[7a]

In the present case, we have no basis for a finding as to the intention of the parties. The contract is silent as to passage of title.[8] Universal, indeed, was not the feeholder of the realty, but was a lessee. We can doubt, but we cannot be certain, that either party actually intended that the steel floor become "part of the realty" within the meaning of that term in the usual landlord-tenant, mortgagor-mortgagee, or vendor-purchaser case.

With respect to the use of the floor in its surroundings, we likewise reach an impasse. The floor, being uncompleted, had not been used at all. In the very least, there had been no use of the floor that led either party to believe that it was a part of the realty.

Our decision, therefore, must be based for the most part on the nature of the connection between the floor and the real estate on which it rested. In this

---

5. *See, e. g.,* Ottawa Plumbing, Heating & Air Conditioning, Inc. v. Moore, 190 Kan. 201, 372 P.2d 1011 (1962), where bathtubs had been completely installed and the area had been vacated.

6. *See, e. g.,* Weintrob's Estate, *supra*; Lyttle v. Petty, Soulard & Walker Realty Co., 26 Misc. 405, 56 N.Y.S. 222 (App. Term 1899); Cullyford Co. v. Joss, 35 Wyo. 10, 246 P. 27 (1926); Matthews Construction Co. v. Brady, 104 N.J.L. 438, 140 A. 433 (Ct.Err. & App. 1928); Kopald Elec. Co. v. Mandan Creamery & Produce Co., 76 N.D. 503, 37 N.W. 2d 253 (1949).

7. It is often said, for example, that the law favors a tenant in cases involving ownership of fixtures. *See* Lindsay Bros. v. Curtis Publishing Co., 236 Pa. 229, 234, 84 A. 783, 784 (1912); Cattie v. Joseph P. Cattie & Bros., 403 Pa. 161, 168 A.2d 313 (1961).

7a. We note, incidentally, that the above-listed factors that go into the test of whether an item has been "affixed" have come to lack reality in the present day and age, and we recognize that modern construction methods serve to further outdate traditional "tests" of affixation.

8. The fact that the installation of the floor was to be to the "complete satisfaction" of Universal would, however, tend to indicate that passage of title would not occur until completion and approval.

regard we are influenced greatly by Pennsylvania cases which place much emphasis on the fact that particular property can or cannot be removed from the realty without material damage to the realty.[9]

■ Here both parties agree that the portion of the floor that had been placed in position at the time of bankruptcy was easily removable, and that no dam-

age to the steel tiles or to the existing structure would occur through removal. Under the circumstances we believe that the floor had not been "affixed" and that title to the materials therefore remained in the contractor Liskey. We agree with the District Court that Liskey's petition to reclaim those materials should be allowed.[10]

The order of the District Court will be affirmed.

9. *See, e. g.,* Clayton v. Lienhard, 312 Pa. 433, 167 A. 321 (1933); Schnebbe Fire Protection Engineering Corp. v. Sandt's Estate, 365 Pa. 287, 74 A.2d 104 (1950); Brandt v. Koppelman, 169 Pa.Super. 236, 82 A.2d 666 (1951); Royal Store Fixture Co. v. Patten, 183 Pa.Super. 249, 130 A.2d 271 (1957).

10. The record is unclear with respect to whether Liskey had recovered the 25 per cent of the material not yet installed at the time of bankruptcy. As to that part of the material it is clear that reclamation should be allowed. In re Thornton Co., *supra* n. 4.